UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ERIC M. SASSO,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JOHN GALIPEAU,<br><br>　　　　Defendants. | CAUSE NO. 3:23-CV-510-CCB-JEM |

OPINION AND ORDER

Eric M. Sasso, a prisoner without a lawyer, filed a complaint about several issues he has with the food service at Westville Correctional Facility. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Sasso alleges that he has contracted food poisoning because of unsafe food practices at Westville Correctional Unit. He explains that the food is prepared in a separate building and then driven over on a truck to his unit. He alleges the food is not kept at the proper temperature in transit or while it is being served. As a result, the food

has been out for more than four hours at an unsafe temperature before he eats it, in violation of Safe Serve Federal Guidelines.

In addition, Mr. Sasso complains that they are fed their last meal around noon or 1:00 pm and then are not fed again until after 6:00 am the next morning. He says, legally, the prison cannot go more than 14 hours between meals. Mr. Sasso also complains that prison policy dictates that they are able to eat only in the kitchen. The kitchen has just 12 seats with table access, but there are 96 inmates in his unit, leaving many with nowhere to sit. He alleges they are not provided with salt or pepper, and the inmates serving the trays rarely wear hair nets, beard guards, aprons, or gloves. He sues Warden John Galipeau and Aramark Supervisor Jason English for injunctive relief and damages.

Conditions of confinement must be severe to support an Eighth Amendment claim. In order for a prisoner to state a claim under the Eighth Amendment, an objective and subjective element must be satisfied. First, "the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The Eighth Amendment protects prisoners only from conditions that "exceed contemporary bounds of decency of a mature, civilized society," *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). On the subjective prong, the plaintiff must allege that the prison officials acted with deliberate indifference—they were subjectively aware of an excessive risk to an inmate's health or safety and consciously disregarded it. *Farmer*, 511 U.S. at 839.

2

Mr. Sasso's complaints about the timing, seasoning, lack of hair nets or gloves, and the dining accommodations do not state a claim for relief. Under the Eighth Amendment, inmates are entitled to food adequate to meet their dietary needs, but not to food of their choosing or food "that is tasty or even appetizing." *Williams v. Berge*, 102 F. App'x 506, 507 (7th Cir. 2004); *see also Isby v. Brown*, 856 F.3d 508, 522 (7th Cir. 2017). Although the Eighth Amendment requires that a prison provide inmates with the "minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834, it does not dictate how those necessities are to be provided. *See French v. Owens*, 777 F.2d 1250, 1257 (7th Cir. 1985) ("There is no question that fire and occupational safety are legitimate concerns under the eighth amendment. However, not every deviation from ideally safe conditions constitutes a violation of the constitution. The eighth amendment does not constitutionalize the Indiana Fire Code. Nor does it require complete compliance with the numerous OSHA regulations." (quotation marks and citations omitted)). Mr. Sasso does not connect the lack of adequate seating or the lack of proper protective gear for the meal servers to a denial of a life necessity. Moreover, the timing of the meals does not state a constitutional claim, as inmates are entitled to adequate nutrition, not to a particular meal schedule. *See Williams v. Shah*, 927 F.3d 476 (7th Cir. 2019) (approving of "brunch" program where inmates received two meals a day as long as they received enough calories overall).

Similarly, Mr. Sasso does not state a claim for damages against either Warden Galipeau or Supervisor English based on getting food poisoning once from the unsafe practices in transporting the food because neither is alleged to have the personal

3

involvement necessary for individual liability. To hold an individual defendant liable for deliberate indifference, the complaint must allege the defendant was personally involved in the alleged deprivation of a constitutional right. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). The complaint does not allege that either defendant was involved in the actual preparation or delivery of the food. Instead, it appears that they are being sued based on their positions as supervisors—Warden Galipeau as the warden of Westville and Supervisor English as the food service supervisor at Westville. A supervisor has personal involvement if "the relevant official caused the constitutional deprivation at issue or acquiesced in some demonstrable way in the alleged constitutional violation." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 828 (7th Cir. 2022) (quotation marks omitted). "In other words, for a supervisor to be liable for the allegedly wrongful conduct of others, he must both (1) know about the conduct and (2) facilitate, approve, condone, or turn a blind eye toward it." *Id.* (quotation marks omitted). The supervisor's facilitating, approving, condoning, or conscious ignoring must be purposeful, knowing, or reckless; a supervisor is not liable for acting negligently. *Id.*

As to Aramark Supervisor English, there are no allegations that he is aware that the alleged unsafe food practices are causing harm. At most, the complaint alleges that there is a record kept of the time the meals are prepared and served in the "daily log book," but, assuming Supervisor English monitored this, knowing the relevant times does not allow an inference that he would also know inmates were actually getting sick

4

from the food. It appears that English is being sued because he is a supervisor, and that is not enough.

Turning to Warden Galipeau, Mr. Sasso alleges that he spoke to the warden about "this issue," and the warden acknowledged the problem but stated it wasn't his responsibility "to make sure [he] receive food that is safe to eat." ECF 1 at 2. This allegation is not enough to allow a claim for damages to go forward against Warden Galipeau. Mr. Sasso does not say what, specifically, he told the warden. Based on the allegations in the complaint, there is no indication the warden was aware of harm to such an extent that he needed to get involved in the food-service aspect of the prison. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). Mr. Sasso has not plausibly alleged Warden Galipeau had actual knowledge of harm in order to hold him liable as a supervisor for deliberate indifference.

Even though Mr. Sasso has not alleged a claim for damages, he has plausibly alleged a claim for injunctive relief. A prisoner is entitled to protection from conditions that "pose an unreasonable risk of serious damage to his future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993). And, here, Mr. Sasso plausibly alleges that the food is rendered potentially unsafe by being maintained in conditions that allow harmful bacteria to grow before it reaches him. *See Anderson v. Morrison*, 835 F.3d 681, 683 (7th

Cir. 2016) ("Prisons are not required to provide a maximally safe environment, but they must address easily preventable, observed hazards that pose a significant risk of severe harm to inmates." (quotation marks and citations omitted)). A claim for injunctive relief requires only that "the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (quotation marks and brackets omitted). He may, thus, proceed against John Galipeau, the Warden of Westville Correctional Facility, in his official capacity to receive permanent injunctive relief to receive food that has been maintained at a safe temperature before it is served to him.

For these reasons, the court:

(1) GRANTS Eric M. Sasso leave to proceed against Warden John Galipeau in his official capacity for injunctive relief to receive food that has been maintained at a safe temperature before it is served to him to the extent required by the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Jason English;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) John Galipeau at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), John Galipeau to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to

6

the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

April 3, 2024

                                            /s/*Cristal C. Brisco*
                                            CRISTAL C. BRISCO, JUDGE
                                            UNITED STATES DISTRICT COURT